**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **KIM S. SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 3:07-cv-248-WHA** |
| ) | |
| **DEBORAH HARDWICK** ) | |
| **GROSSMAN, R.N., B.S.N., J.D.,** ) | |
| ) | |
| **Defendant.** ) | |

**ANSWER AND  COUNTERCLAIM**
**TO AMENDED COMPLAINT**

**GENERAL**

**COMES  NOW** the Defendant Deborah Hardwick Grossman, by and through her attorney and, without waiving the Motion to Dismiss, files the following Answer and Counterclaim to the Amended Complaint:

1.      The Defendant admits the allegations contained in paragraph 2 that she is a resident citizen of the State of George.  However, to the extent the Defendant is able to answer the unnumbered paragraphs contained under the heading "FACTUAL ALLEGATIONS", the Defendant denies each and every allegation and demands strict proof thereof.  For further answer to those unnumbered paragraphs contained within paragraph 2, your Defendant states as follows:

a.      The Defendant hired the Plaintiff as an independent contractor to assist in the physical location and furnishing of her law office and to assist as a secretary.  The Defendant never hired the Plaintiff as an employee.  Instead, however, she agreed to pay Plaintiff as an independent contractor the sum of $500.00 gross each week and to issue her a 1099 at the end of the year.

b.    The Plaintiff kept no set hours at the Defendant's law practice; Plaintiff never punched a clock and, at the end of calendar year 2004, had her CPA give the Plaintiff a 1099 to which Plaintiff never complained.

c.    No payroll taxes were deducted nor paid from the Plaintiff's remuneration.

d.    For further answer, the Defendant not only denies Plaintiff worked in excess of 40 hours per week, but also denies that she was to be paid wages and bonuses. At no time did the Defendant agree to split any legal fees with the Plaintiff nor to allow the Plaintiff to continue working on any cases for Defendant's law firm after termination of the business relationship on or about December 9, 2005.

e.    For further answer, Defendant states that she hired Attorney Davis Whittelsey to handle all legal matters relating to the Plaintiff.  The Defendant relied upon Mr. Whittelsey's advice and allowed Mr. Whittelsey to handle the matter as he, in his discretion as her attorney, thought was reasonable and prudent.  At no time has the Defendant authorized anyone to threaten criminal prosecution.  The Defendant is unlearned in the legal requirements of the Fair Debt Collection Practices Act, and relied upon Attorney Whittelsey to adhere to such requirements and to act on her behalf in a reasonably prudent manner.

f.    At all times, the Defendant relied upon the analysis conducted by a certified public accountant and legal advice given to her by her attorney Davis Whittelsey.

g.    The Defendant showed an officer with the Valley Police Department the report from her certified public accountant which reflected unauthorized paychecks paid to the Plaintiff by herself in excess of $4,000.00.  Additionally, Plaintiff made

unauthorized payments to Alfa Insurance Company totaling $884.00.  The police officer reviewed the report from the CPA and the Defendant's bank records and prepared a warrant of arrest for the Defendant's signature.

h.    The Defendant signed a warrant for theft against the Plaintiff who was arrested on March 19, 2006.

i.    At a preliminary hearing on said arrest warrant, the District Court of Chambers County, Alabama, found probable cause and bound the Plaintiff's case over to the Chambers County Grand Jury.

j.    Conflicting reports indicate that the Grand Jury originally "true billed" the prosecution before later returning a "no bill".

## ABUSE OF PROCESS

2.    For answer to paragraph 3 under the title "Abuse of Process", the Defendant realleges and incorporates by reference the answers given by the Defendant to paragraph 2, and all subparts set forth herein above.

3.    The Defendant denies allegations contained in paragraph 4 and demands strict proof thereof.  For further answer to paragraph 4, the Defendant states that the District Court of Chambers County indeed found probable cause that the Plaintiff had committed a crime and bound Plaintiff's case over to the Grand Jury.  A copy of a transcript of the ruling is marked Exhibit A, attached hereto and specifically incorporated herein by reference.  The Defendant, therefore, had probable cause to sign a warrant against the Plaintiff, which she, as a victim, had the right to do.  The warrant was executed based upon the advice of the Valley Police Department in the interest of justice and to enforce the criminal laws of this state.

4.      The Defendant denies the allegation contained paragraph 5 and demands strict proof thereof.

5.      The Defendant denies each and every allegation contained in paragraph 6 and demands strict proof thereof.

## **FALSE IMPRISONMENT**

6.      For Defendant's answers to paragraph 7, the Defendant realleges and incorporates by reference all answers given to paragraphs 1 through 5 above as if set forth herein.

7.      The Defendant denies each and every allegation contained in paragraph 8 and demands strict proof thereof.

8.      The Defendant denies each and every allegation contained in paragraph 9 and demands strict proof thereof.

9.      The Defendant denies each and every allegation contained in paragraph 10 and demands strict proof thereof.

10.     The Defendant denies each and every allegation contained in paragraph 11 and demands strict proof thereof.

## **MALICIOUS PROSECUTION**

11.     For the Defendant's answers to paragraph 11, the Defendant realleges and incorporates by reference all the answers given previously to paragraphs 1 through 10 set forth above.

12.     The Defendant denies each and every allegation contained in paragraph 12 and demands strict proof thereof.

13.    For further answer to paragraph 12, the Defendant states that probable cause did exist to believe that not only a crime had been committed, but that the Plaintiff had committed that crime.

14.    Defendant neither admits nor denies the allegations contained in paragraph 13. However, for further answer, the Defendant alleges that the District Court of Chambers County found probable cause and bound the case over to the Grand Jury.  The action taken by the Grand Jury is unclear, but will be the subject of further discovery.

15.    The Defendant denies each and every allegation contained in paragraph 14 and demands strict proof thereof.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL ANGUISH

16.    For the Defendant's answers to paragraph 16, the Defendant realleges and incorporates by reference all the answers given previously to paragraphs 1 through 15 set forth above.

17.    The Defendant denies each and every allegation contained in paragraph 16 and demands strict proof thereof.

18.    The Defendant denies each and every allegation contained in paragraph 17 and demands strict proof thereof.

## OUTRAGE

19.    For the Defendant's answers to paragraph 18, the Defendant realleges and incorporates by reference all the answers given previously to paragraphs 1 through 18 set forth above.

20.    The Defendant denies each and every allegation contained in paragraph 19 and demands strict proof thereof.

21.    The Defendant denies each and every allegation contained in paragraph 20 and demands strict proof thereof.

22.    The Defendant denies each and every allegation contained in paragraph 21 and demands strict proof thereof.

## **FRAUD**

23.    For the Defendant's answers to paragraph 23, the Defendant realleges and incorporates by reference all the answers given previously to paragraphs 1 through 22 set forth above.

24.    The Defendant denies each and every allegation contained in paragraph 24 and demands strict proof thereof.  For further answer, the Defendant alleges that the Plaintiff was engaged as an independent contractor to be paid a gross amount of $500.00 per week, with the Plaintiff paying her own taxes based upon a 1099.  No benefits, additional wages nor bonuses were promised Plaintiff.

25.    The Defendant denies each and every allegation contained in paragraph 25 and demands strict proof thereof.

26.    The Defendant denies each and every allegation contained in paragraph 26 and demands strict proof thereof.  For further answer, the Defendant states that Plaintiff at all times was engaged as an independent contractor, with the understanding she would receive a 1099 and pay her own taxes.

27.    The Defendant denies each and every allegation contained in paragraph 27 and demands strict proof thereof.

28.     The Defendant denies each and every allegation contained in paragraph 28 and demands strict proof thereof.

29.     The Defendant denies each and every allegation contained in paragraph 29 and demands strict proof thereof.

## <u>AFFIRMATIVE DEFENSES</u>

1.     The Complaint fails to state a cause of action.

2.     The Defendant pleads not guilty.

3.     The Plaintiff is guilty of fraud.

4.     The Defendant does not come into court with clean hands.

5.     There is a complete failure of consideration between the Plaintiff and the Defendant.

6.     The Plaintiff is estopped from pursuing this action or collecting any funds from the Defendant because of the nature of her illegal actions practiced upon the Plaintiff pertaining to the subject matter of the complaint.

7.     The Plaintiff has failed to state a claim upon which relief can be entered against the Defendant.

8.     The Defendant pleads qualified immunity as a result of the actions and statements taken and made by the Defendant in connection with the subject matter of the lawsuit.

9.     Plaintiff's claims for punitive damages violate the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments of the Constitution of the United States and Article I, §§ 1, 2, 6, 11, 13, 15, 22 and 35 of the Constitution of Alabama, and is improper under the statutes, common law, public policies and applicable rules of the State of Alabama, on the following grounds:

(a)    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to impose punitive damages, which are penal in nature, against a civil defendant upon Plaintiff's satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b)    The procedures pursuant to which punitive damages are awarded and the guidelines given to jurors are vague and ambiguous and fail to provide specific standards on the determination of whether to award punitive damages or specific standards as to a constitutionally reasonable limit on the amount of any award against defendants, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(c)    Any award of punitive damages to Plaintiff would violate the procedural safeguards provided to defendants under the Sixth Amendment of the United States Constitution in that punitive damages are penal in nature, and consequently, a defendant in a case in which punitive damages are sought should be entitled to the same procedural safeguards accorded to a defendant in a criminal proceeding.  Since Alabama law and procedures which allow the imposition of punitive damages do not afford civil defendants the same protections afforded criminal defendants, awards of punitive damages result in an arbitrary deprivation of property in violation of the Constitution;

(d)    Plaintiff's Complaint, to the extent that it seeks exemplary or punitive damages, violates defendants' rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution;

(e)     Plaintiff's claims for punitive damages violate equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Punitive damage awards discriminate against defendants in that the protections of criminal trials and the limiting of the amount of punitive damages awardable may be granted to some classes of defendants under certain states' law, but may be denied to these defendants and others similarly situated.

(f)     Present Alabama law and/or practice may impermissibly permit the admission of evidence relative to punitive damages in the same proceeding during which liability is determined and/or evidence having little bearing on the amount of punitive damages be awarded.

(g)     Any award of punitive damages would allow Plaintiff to be compensated for elements of damages that would be duplicative of an award of damages received for mental anguish/emotional distress or that would not otherwise be recognized under Alabama law.

## COUNTERCLAIM

### PARTIES

1.      The Counter-Plaintiff Deborah Hardwick Grossman ("Grossman") is a resident citizen of the State of Georgia.

2.      The Counter-Defendant, Kim S. Smith, is a resident citizen of the State of Alabama.

## JURISDICTION

3.      Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1332 as the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

## VENUE

4.      Venue is appropriate in the Middle District of Alabama, Eastern Division, because the Counter-Defendant resides in said Eastern Division of the Middle District of Alabama and because the acts complained of occurred in said division and district.

## COUNT I
### (Conversion)

5.      Counter-Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 4 above as if fully set out herein.

6.      Counter-Plaintiff claims $4,884.00 due from Counter-Defendant because of the conversion of Counter-Plaintiff's funds as evidenced by the conversion of the following specific checks:

| Date | Payee | Check # | Amount |
|------|-------|---------|--------|
| 3/21/05 | Kim Smith | 1295 | $500.00 |
| 5/27/05 | Kim Smith | 1361 | $500.00 |
| 6/27/05 | Kim Smith | 1401 | $500.00 |
| 8/22/05 | Kim Smith | 1457 | $500.00 |
| 9/26/05 | Kim Smith | 1510 | $500.00 |
| 11/30/05 | Kim Smith | 1599 | $500.00 |
| 12/5/05 | Kim Smith | 1614 | $500.00 |

1088948

| 12/6/05 | Kim Smith | 1615 | $500.00 |
| 7/1/05 | Alfa Insurance Co. | 1409 | $220.00 |
| 8/31/05 | Alfa Insurance Co. | 1469 | $332.00 |
| 10/26/05 | Alfa Insurance Co. | 1554 | $332.00 |

7.   The Counter-Defendant, with knowledge that Counter-Plaintiff has immediate right of possession of said $4,884.00 has wrongfully exercised dominion over Counter-Plaintiff's funds, resulting in a conversion of said funds.

8.   As a proximate consequence of the Counter-Defendant's conversion of said checks and funds, Counter-Plaintiff has been damaged by the loss of $4,884.00 plus interest; has suffered mental anguish and emotional distress, and has been otherwise damaged.

WHEREFORE, Counter-Plaintiff Grossman demands judgment against Counter-Defendant Smith in such an amount of compensatory and punitive damages as the Court and jury deem reasonable, together with costs of this action.

## COUNT II
### (Money Had and Received)

9.   Counter-Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 8 above as if fully set out herein.

10.   Counter-Plaintiff claims of the Counter-Defendant the sum of $4,884.00, together with interest thereon, for money had and received by the Counter-Defendant without consideration.

11.    As a proximate consequence and result of the wrongful appropriation or taking of said $4,884.00, the Counter-Plaintiff was injured and damaged as alleged in paragraph 8 above, which is specifically incorporated herein by reference.

WHEREFORE, Counter-Plaintiff Grossman demands judgment against Counter-Defendant Smith in such an amount as in the sound discretion of the Court and jury should be awarded, together with costs thereon.

### COUNT III
### (Theft of Proceeds)

12.    Counter-Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 11 above as if fully set out herein.

13.    Counter-Plaintiff claims of the Counter-Defendant the sum of $4,484.00 as a result of trespass to the person or property of the Counter-Plaintiff based upon the intentional taking of said funds by unauthorized checks made payable to and negotiated by the Counter-Defendant.

14.    As a proximate consequence and result of the trespass committed by Counter-Defendant, Counter-Plaintiff was injured and damaged as alleged in paragraph 8 above, which is specifically incorporated herein by reference.

WHEREFORE, Counter-Plaintiff demands judgment against Counter-Defendant in such an amount as in the sound discretion of the Court and jury should be awarded, together with costs thereon.

**GEORGE L. BECK, JR. (BEC011)**
ATTORNEY FOR DEFENDANT/COUNTER-PLAINTIFF
CAPELL & HOWARD, P.C.

Post Office Box 2069
Montgomery, AL  36102-2069
Telephone:    (334) 241-8000
Facsimile:    (334) 323-8888


**OF COUNSEL:**

WILLIAM O. WALTON, III
Suite 304
2515 East Glenn Avenue
Auburn, AL  36830


<u>COUNTER-PLAINTIFF RESPECTFULLY DEMANDS TRIAL BY JURY</u>


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on the following counsel of record by placing a copy in the United States mail, postage prepaid and properly addressed to them on this 25 day of April, 2007.


Keith W. Veigas, Jr.
PATTON & VEIGAS, P.C.
1200 20th Street South
Birmingham, AL  35205


**By:**  _George L. Beck, Jr._
**GEORGE L. BECK, JR. (BEC011)**

# FREEDOM COURT REPORTING

Page 97

1  well, you know -- I said why don't you get
2  some new tires. And Kim said oh, I just
3  can't afford to buy any right now. And
4  Deborah said well, I'll -- call Kenny
5  Knotts and tell him to put some tires on
6  your car and I'll pay for it. And Kim was
7  like no, she said they were -- Deborah, I
8  think, is the one who called Kenny Knotts'
9  Tire Service because he came and picked up
10 Kim's truck at the office, put tires on it,
11 and sent a bill to Deborah for the tires.
12     Q Okay. All right. Now, are you
13 familiar with somebody named Mr. Marmaduke?
14     A Yes.
15     Q Were there cash payments that were
16 made to Mr. Marmaduke?
17     A I know he got money for referring
18 clients to us. I never took him any money
19 personally.
20     Q But you know that the money was sent
21 out of the office to him?
22     A Yes.
23     Q And that was for cases that he sent

Page 98

1  to the office?
2      MR. CLARK: I object to any further
3  testimony along this line.
4      THE COURT: Sustained.
5      Q (By Mr. Veigas) Was Mr. Marmaduke an
6  employee there or a member of the firm?
7      A No.
8      Q Do you know why his phone number was
9  listed in the firm advertising?
10     A I don't know.
11     Q But you know that it was listed in
12 the firm advertising?
13     A I had seen the advertisement and saw
14 a 1(800) number, and I never thought
15 anything about it until one day when we
16 were talking about taking -- it was time to
17 -- for new phone books to go out and we
18 were going to put new ads in. I said what
19 is this 1(800) number. And Deborah said
20 that's Cory's number.
21     MR. VEIGAS: Fine. That's all I
22 have, Judge.
23     THE COURT: Cross-examination.

Page 99

1  CROSS-EXAMINATION BY MR. CLARK:
2      Q So, you have recollection of a -- of
3  an incident where Ms. Smith told
4  Ms. Grossman that she needed some new tires
5  and Ms. Grossman paid for them for her?
6      A Kim just said that her tires were
7  bad and Deborah offered to buy her -- put
8  new tires on her truck.
9      Q Okay. You are friends with
10 Ms. Smith, are you not?
11     A Yes.
12     Q Close friends?
13     A We're good friends.
14     MR. CLARK: Okay. Thank you very
15 much for coming. I don't have anything
16 further.
17     THE COURT: Anything further?
18 DIRECT EXAMINATION BY MR. VEIGAS:
19     Q Would you lie for Ms. Smith?
20     A No.
21     MR. VEIGAS: That's all I have,
22
23 Judge.

Page 100

1      THE COURT: You can step down. Go
2  back outside. Please don't discuss your
3  testimony with anyone else.
4      Call your next witness.
5      MR. VEIGAS: Just one moment,
6  Judge.
7      THE COURT: That's fine.
8      MR. VEIGAS: Judge, that's all we
9  have at this time.
10     THE COURT: Anything further,
11 Mr. Clark?
12     MR. CLARK: No rebuttal, Your Honor.
13     THE COURT: All right. Based upon
14 the evidence produced at this hearing, I
15 find there is probable cause to believe
16 that this act was committed by this
17 defendant. And this case is bound over to
18 the Grand Jury for further consideration.
19 This hearing is adjourned.
20
21 (Whereupon, the hearing was adjourned at
22
23 11:30 a.m.)

25 (Pages 97 to 100)

EXHIBIT

A

# FREEDOM COURT REPORTING

Page 101

1

2

Page 102

1      C E R T I F I C A T E

2

3  State of Alabama

4  Jefferson County

5

6    I hereby certify that the above and

7  foregoing hearing was taken down by me in

8  stenotype and the questions and answers

9  thereto were transcribed by means of

10  computer-aided transcription, and that the

11  foregoing represents a true and correct

12  transcript of the testimony given by said

13  witness upon said hearing.

14    I further certify that I am neither of

15  counsel, nor of kin to the parties to the

16  action, nor am I in anyway interested in

17  the result of said cause.

18

19

20

21

22

23    Racheal Lynn Isbell, CSR

26 (Pages 101 to 102)

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660